IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CAPROCK MILLING & CRUSHING, LLC,

      Plaintiff,

v.

PERDUE AGRIBUSINESS LLC,

      Defendant.

Civil (C.V.): 2:24-CV-038-Z
Bankruptcy No. (B.P.): 23-20251-rlj11
Adversary No. (A.P.): 24-02000-rlj

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (A.P. ECF No. 9), Motion to Transfer the Adversary Proceeding ("Motion") (A.P. ECF No. 12), and Motion to Abstain (A.P. ECF No. 11), all filed February 20, 2024. Having reviewed the Motions, briefing, and relevant law, the Court **DENIES** the Motion to Dismiss, **GRANTS** the Motion to Transfer, and **DENIES AS MOOT** the Motion to Abstain. Because this Order deals with a bankruptcy petition, an adversary proceeding, and a civil case in this Court, a proceeding abbreviation noted in the above caption will precede all ECF numbers.

BACKGROUND

CapRock Milling & Crushing filed a Chapter 11 bankruptcy petition on November 3, 2023. B.P. ECF No. 1. Following proceedings in that petition, CapRock filed an Adversary Proceeding on January 18, 2024, against Perdue Agribusiness seeking damages for a breach of a prepetition contract. A.P. ECF No. 1. The Adversary Proceeding is rooted in a July 2021 contract wherein Perdue hired CapRock to "perform milling and crushing services for Perdue's organic soybeans." A.P. ECF No. 1 at 1. CapRock avers Perdue ceased making its invoice payments which forced CapRock into bankruptcy. *Id.* at 1–7. CapRock's only claim against Perdue is a breach of contract

claim arising from the Toll Processing Agreement between CapRock and Perdue. *Id.* at 7–8. CapRock admits the Toll Processing Agreement is a "valid, enforceable contract between CapRock Milling and Perdue." *Id.* at 7.

Perdue moved to withdraw the reference of the Adversary Proceeding from the Bankruptcy Court on February 20, 2024. A.P. ECF No. 7. Withdraw of the reference to the Bankruptcy Court is appropriate when there is a valid jury trial demand and the parties do not consent to trial before the Bankruptcy Court. Accordingly, the Bankruptcy Judge recommended withdraw of the reference on July 3, 2024. A.P. ECF No. 42. This Court adopted the Bankruptcy Judge's recommendation, withdrew the reference of the Adversary Proceeding, and assumed management of the case on September 17, 2024. C.V. ECF No. 3. At the same time Perdue moved for withdraw of the reference, Perdue also sought dismissal of the Adversary Proceeding and if denied, transfer of the case to the District of Maryland. A.P. ECF Nos. 9, 12. The Bankruptcy Judge inferred that this Court should deny Perdue's Motion to Dismiss because personal jurisdiction is met and left resolution of the Motion to Transfer up to this Court. A.P. ECF No. 42 at 5–6, 8.

LEGAL STANDARD

Two statutes may apply to transfer of proceedings related to a bankruptcy proceeding: 28 U.S.C Sections 1404(a) and 1412. Section 1404(a) is the ordinary venue transfer statute. Section 1412 is the venue transfer statute for cases and proceedings that arise "under title 11." 28 U.S.C. § 1412. A "split of authority" exists in the Fifth Circuit on whether Section 1404(a) or Section 1412 is the best statute to apply to the "transfer of a *non-core*, related case." *LSREF2 Baron, LLC v. Aguilar*, No. 3:12-cv-1242, 2013 WL 230381, at *3 (N.D. Tex. Jan. 18, 2013) (emphasis added); *Domain Protection, LLC v. Sea Wasp, LLC*, No. 3:18-CV-01578, 2018 WL 5809298, at *3 (N.D. Tex. Nov. 6, 2018) ("[T]he Fifth Circuit has not yet determined whether [Section] 1412 also

applies to 'non-core' proceedings."). Some hold Section 1404(a) is most appropriate. *See, e.g.,* *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 97–98 (Bankr. S.D. Tex. 2009) ("Section 1412's application is limited to core matters."); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, No. Civ.H-03-4973, 2004 WL 2278770, at *14 (S.D. Tex. Sept. 14, 2004) ("[T]he plain language of 28 U.S.C. § 1412 indicates that the statute applies only to the transfer of core proceedings. The weight of authority concurs with this reading of Section 1412.") (citing cases); *Mirant Corp. v. The S. Co.*, 337 B.R. 107, 123–24 (Bankr. N.D. Tex. 2006) ("The Court is of the belief that . . . '[f]or a proceeding arising in or related to a case under title 11, the general provisions of 28 U.S.C. § 1404(a) apply.'") (quoting *In re FoxMeyer Corp.*, 217 B.R. 511, 514 (Bankr. N.D. Tex. 1997)). But others disagree. *See, e.g., Sea Wasp*, 2018 WL 5809298, at *3 ("Courts in the Northern District of Texas that have addressed this issue have held that § 1412 applies to non-core proceedings.") (citing cases).

This Court holds the plain language of Section 1412 indicates it is not appropriate for noncore, bankruptcy-related cases.[1] Congress wrote Section 1412 to only apply to cases or proceedings "under title 11." 28 U.S.C. § 1412. Nowhere do the terms "related to" or "non-core" or similar terms appear that would extend the statute's applicability to noncore proceedings that are only related to a pending bankruptcy under title 11. Instead, the text clearly states that Section 1412 is for transfer of bankruptcy cases and Section 1404(a) is for all other *civil* cases. *See In re Spillane*, 884 F.2d 642, 645 n.4 (1st Cir. 1989) ("Transfer of *bankruptcy cases* is authorized by a separate provision, 28 U.S.C. § 1412.") (emphasis added). Because of the controlling statutory language and the absence of controlling Fifth Circuit precedent, the Court will primarily analyze the Motion under Section 1404(a). *See Fulcrum Credit Partners LLC v. Chipmos Techs. Inc.*, No.

---

1 Notwithstanding Federal Rule of Bankruptcy Procedure 7087's admonition that adversary proceedings, in general, are transferred under 28 U.S.C. § 1412. FED. R. BANKR. P. 7087.

A-10-CA-060, 2010 WL 11444280, at *2 (W.D. Tex. Mar. 30, 2010) ("Thus, transfers of 'non-core' proceedings are governed instead by § 1404(a), the general change of venue statute applicable to civil cases . . . .").

Regardless, the analysis of Section 1412 "functions very similarly to [S]ection 1404(a)." *City of Clinton v. Pilgrim's Pride Corp.*, Nos. 4:09-CV-386, 4:09-CV-387, 2009 WL 4884430, at *2 (N.D. Tex. Dec. 17, 2009) (citing *In re Emerson Radio Corp.*, 52 F.3d 50, 56 (3d Cir. 1995) (holding Sections 1404(a) and 1412 "largely include the same criteria for transfer of cases")); *EnCana Oil & Gas (USA) Inc. v. TSC Sieber Servs., L.C.*, No. 3:09-CV-1791, 2010 WL 3385018, at *1 (N.D. Tex. Aug. 20, 2010) ("These statutes contain similar language and have been similarly applied . . . ."). A few differences are worth noting. *See Sea Wasp*, 2018 WL 5809298, at *2. First, Section 1404(a) permits a district court to transfer any civil action. But Section 1412 only permits transfer of "a case or proceeding under title 11." 28 U.S.C. § 1412. Second, Section 1404(a) only allows a district court to transfer a case to another "district or division where it might have been brought." *Id.* § 1404(a). But Section 1412 has no similar limit. And third, Section 1404(a) only permits district courts to transfer a case for "the convenience of the parties and witnesses, in the interest of justice." *Id.* But Section 1412 is disjunctive and allows transfer for the convenience of the parties or in the interests of justice. *Id.* § 1412.

For a noncore proceeding under Section 1404(a), a "district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Valid forum selection clauses represent the parties' consent under Section 1404(a) and so are presumptively enforceable because they "represent[] the parties' agreement as to the most proper forum." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988); *Kevlin Servs. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir.

1995) (forum selection clauses are "*prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable") (internal quotation omitted). They "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart*, 487 U.S. at 33) (alteration in original). When a valid forum selection clause exists, the district court gives no weight to plaintiff's choice of forum, does not consider arguments about parties' private interests, and applies the choice of law rules for the transferee jurisdiction. *See id.* at 63–65. If the parties have preselected a venue that will govern their dispute, then they consider that forum to be the most convenient. Thus, "arguments about the parties' private interests" like costs of trial in the forum, the convenience of witnesses, and other "practical problems that make trial of a case easy, expeditious and inexpensive," are no longer persuasive to the court when a forum selection clause exists. *Id.* at 64–65.

Consideration of the remaining public-interest factors renders a forum selection clause enforceable "except in unusual cases." *Id.* at 64. Flouting one "will not be common." *Id.* Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)). In bankruptcy-related proceedings, another public interest factor bears weight: the centralization of all bankruptcy proceedings when the current court is best equipped to handle resolution of the related proceeding. *See In re Cole*, No. 08-30725, 2008 WL 2857118, at *3 (Bankr. N.D. Tex. July 21, 2008) (finding that the "presumption is that civil adversary proceedings should be litigated in the same venue as the underlying bankruptcy case"

5

when the "court handling the underlying bankruptcy case is best equipped to handle" the related proceeding).

This public interest factor weighs heaviest for core proceedings. *In re Manchester, Inc.*, 417 B.R. 377, 384 (Bankr. N.D. Tex. 2009) ("[W]ith respect to 'core' bankruptcy matters, public policy favors the centralization of bankruptcy proceedings in the bankruptcy court where the debtor's bankruptcy case is pending."). However, for noncore proceedings, "forum selection clauses are enforceable to the same extent that they are enforceable outside of bankruptcy." *Id.* at 385 (citing *In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008)); *see also In re Millennium Studios, Inc.*, 286 B.R. 300 (D. Md. 2002) (holding that the public policy presuming the centralization of bankruptcy proceedings in the court where the bankruptcy is pending was not enough to prevent enforcement of a forum selection clause in an action by a chapter 11 debtor claiming a breach of a prepetition contract). Thus, the public-interest factor counseling keeping adversary proceedings in the court handling the bankruptcy is germane, but easily overcome, when a valid forum selection clause governs a noncore proceeding.

ANALYSIS

**I. The Court Has Personal Jurisdiction Over Perdue Agribusiness.**

First, the Court addresses Perdue's personal jurisdiction challenge. *See Hines v. Stamos*, 111 F.4th 551, 563 (5th Cir. 2024) ("[C]ourts routinely resolve the personal jurisdiction challenges first . . . ."). Perdue argues that the Adversary Proceeding should be dismissed because this Court lacks personal jurisdiction over Perdue. A.P. ECF No. 13–18. It first claims that specific personal jurisdiction is lacking because they only have limited contacts in Texas none of which are related to CapRock's breach of contract claim. *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024). And second it argues general personal jurisdiction is lacking because Texas

is neither Perdue's state of incorporation nor its principal place of business. *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022).

But Perdue overlooks the true basis for personal jurisdiction here. Personal jurisdiction exists because the Adversary Proceeding is related to a proceeding under the Bankruptcy Code. "A court can exercise personal jurisdiction over a defendant if the defendant has had minimum contacts with the forum and the maintenance of the suit in the forum will not offend traditional notions of fair play and substantial justice." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1257 (5th Cir. 1994). In matters of federal law that provide for nationwide service of process, "the relevant inquiry is whether the defendant has had minimum contacts *with the United States*." *Id.* at 1258 (emphasis added). Thus, federal subject matter jurisdiction must be satisfied to examine the relevant forum for personal jurisdiction.

Bankruptcy is exclusively a matter of federal law. *See New Lamp Chimney Co. v. Ansonia Brass & Copper Co.*, 91 U.S. 656, 661 (1875). The Bankruptcy Code explicitly grants jurisdiction to federal district courts over "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). A civil proceeding is related to a case under title 11 if "the outcome of that proceeding could *conceivably* have effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). The Adversary Proceeding is related to CapRock's pending title 11 bankruptcy. It concerns pending invoices that, if recovered, would infuse CapRock with substantial funds and aid in the administration of the bankruptcy estate. Thus, federal subject matter jurisdiction is met under 28 U.S.C. Section 1334(b).

Because this Court has federal subject matter jurisdiction over the Adversary Proceeding, personal jurisdiction can be assessed examining federal contacts, not state contacts. Federal Rule of Bankruptcy Procedure Rule 7004(d) provides for nationwide service of process of adversary

proceedings. FED. R. BANKR. P. 7004(d). The Bankruptcy Rules continue: "If the exercise of jurisdiction is consistent with the Constitution, . . . serving a summons or filing a waiver of service in accordance with this rule . . . is effective to establish personal jurisdiction over the person of any defendant with respect to . . . a civil proceeding . . . related to a case under the Code." FED. R. BANKR. P. 7004(f). Thus, the forum here is not Texas as Perdue argues. It is the United States. *In re L.D. Brinkman Holdings, Inc.*, 310 B.R. 686, 688 (Bankr. N.D. Tex. 2004) (quoting *Busch*, 11 F.3d at 1258). Perdue has more than sufficient contacts with the United States to be subject to personal jurisdiction here. Perdue is a Maryland company. Residing in the United States is sufficient to exercise personal jurisdiction over Perdue in a matter related to a proceeding under title 11. *See In re L.D. Brinkman Holdings, Inc.*, 310 B.R. at 689 ("[I]t does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a . . . defendant residing within the United States.") (quoting *Busch*, 11 F.3d at 1258). And even further, a process server hand served Perdue with process to its registered agent on January 23, 2024. A.P. ECF No. 4. Under the Bankruptcy Rules, the Court has personal jurisdiction over Perdue. Accordingly, Perdue's Motion to Dismiss is **DENIED**.

## II. The Adversary Proceeding is Noncore.

As explained, whether a proceeding is core or noncore under 28 U.S.C. Section 157 to a related bankruptcy affects the weight granted the forum selection clause. To examine the enforceability of the forum selection clause requires addressing the "threshold issue" of whether the Adversary Proceeding in noncore or not. A.P. ECF No. 12-1 at 20. A proceeding is core if it meets the list in 28 U.S.C. Section 157(b)(2). None of those apply to the Adversary Proceeding here which is a state law breach of contract claim. But Section 157(b)(2) is not the exhaustive list. 28 U.S.C. § 157(b)(2) ("Core proceedings include, but are not limited to . . . ."). A proceeding may

be core if "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Wood v. Wood*, 825 F.2d 90, 97 (5th Cir. 1987). The *Wood* court, interpreting the Supreme Court's plurality decision in *Northern Pipeline v. Marathon*, 458 U.S. 50 (1982), held *Marathon* counseled that "controversies that do not depend on the bankruptcy laws for their existence — suits that could proceed in another court even in the absence of bankruptcy — are not core proceedings." *Wood*, 825 F.2d at 96. Section 157, passed after *Marathon*, modified *Marathon*'s interpretation a bit and explained that whether a proceeding is core or not cannot depend solely on whether "its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Combining *Marathon* and Section 157's definitions, the *Wood* court concluded that if "the proceeding does not invoke a substantive right created by the federal bankruptcy law *and* is one that could exist outside of bankruptcy it is not a core proceeding." *Wood*, 825 F.2d at 97 (emphasis added).

The Adversary Proceeding is thus not a core proceeding. It fits neither *Wood* prong. It does not invoke a substantive right created by federal bankruptcy law. Instead, it is a simple state law breach of contract claim. Being filed by a plaintiff in bankruptcy does not mean it arises out of a substantive federal bankruptcy right. And second, the Adversary Proceeding is one that could exist outside of bankruptcy. CapRock could have easily filed its breach of contract claim against Perdue prepetition. State-law breach of contract claims, of course, routinely exist outside of bankruptcy. As the *Wood* court concluded, it "is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court." *Id.*; *see also, e.g., In re Manchester*, 417 B.R. at 386–87 (holding a prepetition breach of contract claim noncore); *In re Royce Homes, L.P.*, No. 09-32467-H4-7, 2011 WL 13340482, at *2 (Bankr. S.D. Tex. Oct. 13, 2011) ("Claims based upon state law for prepetition breaches of contract are non-core proceedings.").

### III. The Forum Selection Clause is Enforceable.

In noncore proceedings, forum selection clauses are presumptively enforceable unless "unreasonable under the circumstances." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)); *In re Manchester*, 417 B.R. at 385 (holding that in noncore bankruptcy proceedings, "forum selection clauses are enforceable *to the same extent* that they are enforceable outside of bankruptcy") (emphasis added); *In re Bailey*, 217 B.R. 523, 527 (Bankr. N.D. Tex. 1997) ("[T]he mere fact that Debtor/Plaintiff is in bankruptcy is not sufficient to prevent enforcement of a contractual forum selection clause.") CapRock thus bears the "'heavy burden' of demonstrating that enforcement of the forum selection clause would be unreasonable" under the factors the Supreme Court laid out in *Bremen*. *In re Manchester*, 417 B.R. at 387 (quoting *Bremen*, 407 U.S. at 17). A forum selection may not be enforced as unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963 (quoting *Bremen*, 407 U.S. at 18) (citing *Carnival Cruise Lines Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

CapRock fails to meet its heavy burden here. The forum selection clause in the Toll Processing Agreement between CapRock and Perdue states: "Any action or proceeding brought by either party hereto which is related to this Agreement shall be brought in a Federal or State court having proper subject matter jurisdiction and located within the State of Maryland." A.P. ECF No. 1-1 at 5. The Toll Processing Agreement was signed by both parties. *Id.* at 6. CapRock completely admits factors one and three go against it. *See* A.P. ECF No. 30 at 21 n.6 ("CapRock

10

Milling does not contend its agreement to the forum selection clause involved fraud or overreaching or that any unfairness of the chosen law will deprive it of a remedy."). But it contends that factors two and four counsel declaring the forum selection clause unreasonable. *Id.*

CapRock argues it will be deprived of its day in court if the Adversary Proceeding is transferred to Maryland per the Toll Processing Agreement. It claims that "significant expense, inconvenience, [and] unfairness" present hurdles to litigating its claim in Maryland. *Id.* Specifically, CapRock notes the financial disparity between CapRock and Perdue, noting "Perdue's resources dwarf CapRock Milling," and in contrast, "CapRock Milling is a relatively small, limited liability company." *Id.* at 24. This disparity, it argues, will "increase the costs" for it to litigate in Maryland. *Id.* Perdue responds that CapRock cannot with a straight face make these claims because "it conducted all of the business at issue in the Complaint through its warehouse located in Baltimore, Maryland." A.P. ECF No. 12-1 at 22 (emphasis in original). In short, Perdue notes Maryland was perfectly appropriate for CapRock to make money, but not litigate per the forum selection clause it agreed to.

The forum selection clause is not unreasonable because it will not deprive CapRock of its day in court. The sheer "inconvenience of trying a case in one state versus another is insufficient to invalidate a forum-selection clause." *Hartash Const., Inc. v. Drury Inns, Inc.*, No. 00-31120, 2001 WL 361109, at *2 (5th Cir. Mar. 23, 2001). The Supreme Court in *Carnival Cruise Lines, Inc. v. Shute*, interpreted its past decisions hinting at "serious inconvenience" carrying "greater weight in determining the reasonableness of the forum" to only be addressing when "essentially local disputes" are to be transferred to a "remote alien forum." 499 U.S. 585, 594 (1991) (quoting *Bremen*, 407 U.S. at 17).

In fact, the Supreme Court has dismissed the very claims CapRock makes here. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. Such inconvenience of the selected forum "was clearly foreseeable at the time of contracting." *Bremen*, 407 U.S. at 17–18; *see also Hartash*, 2001 WL 361109, at \*2 (noting that unless parties argue they were not aware of the clause at time of contracting, the inconvenience was foreseeable); *Matthews v. Tidewater, Inc.*, 108 F.4th 361, 368 (5th Cir. 2024) (holding that a forum selection clause did not deprive a litigant of his day in court even though he had a physical condition that rendered travel to England inconvenient). CapRock may incur "costs and expenses because of the need for Maryland counsel in addition to the inefficiencies of supervising and managing litigation in a different forum." A.P. ECF No. 30 at 21. But all these considerations were present at the time CapRock signed the agreement and were ones it should have considered. The forum selection clause is not unreasonable for this reason because CapRock itself did not find it unreasonable.

CapRock focuses fire on the public policy prong. It argues that the "economic and efficient administration of a bankruptcy estate may . . . render a forum selection clause unreasonable in view of public policy." A.P. ECF No. 30 at 16–17. This is so because this case is related to CapRock's in-progress bankruptcy, an associated company's (CapRock Land) bankruptcy, and other "third-party proceedings already pending before this Court." *Id.* at 19. It argues that the "[Bankruptcy] Court has gained familiarity with both cases and the related proceedings." *Id.* Transfer would "add unnecessary coordination costs and expenses, unduly complicate the case and proceedings, and risk inconsistent rulings and findings." *Id.* at 20. It further worries that transfer will harm the bankruptcy administration because it "will necessarily inject uncertainty and timing

issues in relation to the efficient administration" of the bankruptcy by causing the Bankruptcy Court to "lose control of the scheduling." *Id.* at 20–21.

But CapRock's public policy arguments have most purchase when the proceeding is core rather than noncore. *Core* proceedings should often be centralized with the underlying bankruptcy because "the public interest in centralizing bankruptcy proceedings generally outweighs the public and private interests in enforcing a forum selection clause." *In re Certa Dose, Inc.*, No. 21-11045, 2021 WL 5177376, at *16 (Bankr. S.D.N.Y. Nov. 4, 2021); *In re Wheeling-Pittsburgh Steel Corp.*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989) ("A disputed claim is a core matter to be heard by the bankruptcy court despite a forum selection clause."); Daniel W. Morton-Bentley, Annotation, *Enforceability of Forum Selection Clauses in Bankruptcy Proceedings*, 17 A.L.R. Fed. 3d Art. 7 (2016) ("Generally, courts have enforced forum selection clauses in noncore proceedings but denied enforcement within core proceedings."). But even for core proceedings, this public policy argument is contested. *See In re D.E. Frey Grp., Inc.*, 387 B.R. 799, 804–06 (D. Colo. 2008) (examining the genesis of the public policy argument for centralization of bankruptcy proceedings and concluding it is "contrary to law").

However, when the proceeding is noncore, the public policy of centralizing proceedings is lessened if not entirely absent. In *In re Manchester*, this Court's Bankruptcy Court concluded that "forum selection clauses are enforceable to the same extent that they are enforceable outside of bankruptcy" if the proceeding is noncore. 417 B.R. 377, 385 (Bankr. N.D. Tex. 2009). *Manchester* all but held these public policy considerations are not applicable for noncore proceedings. Other courts agree. *See In re McCrary & Dunlap Constr. Co., LLC*, 256 B.R. 264, 267 (Bankr. M.D. Tenn. 2000) ("The policy favoring centralization of bankruptcy proceedings . . . is not so strong as to abandon the forum selection clause where the proceeding is non-core."); *ResCap Liquidating*

*Tr. v. RBC Mortg. Co.*, No. 14 Civ. 4457, 2014 WL 8103896 (S.D.N.Y. July 18, 2014) (granting withdraw of reference and transferring venue pursuant to a forum selection clause in a noncore proceeding); *Nukote Intern., Inc. v. Office Depot, Inc.*, No. 3:09-0921, 2009 WL 2840482 (M.D. Tenn. Nov. 16, 2009) (same); *In re Sona Mobile Holdings Corp.*, No. 2:23-cv-00252, 2013 WL 3678856 (D. Nev. July 5, 2013) (enforcing a forum selection clause in a noncore proceeding and granting a motion to transfer). The broad range of authority concludes that while the public policy of centralization may play a role in whether to enforce a forum selection clause for a noncore proceeding, it is "not so strong." *In re N. Parent, Inc.*, 221 B.R. 609, 620 (Bankr. D. Mass. 1998).[2] Even more, this public policy of centralization is not to centralize the proceedings in a "single judicial *district*" but instead "in the *bankruptcy court* where the chapter proceeding is pending." *In re Millennium Studios, Inc.*, 286 B.R. 300, 307 (D. Md. 2002) (emphasis in original) (citing *Envirolite Enters., Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007 (S.D.N.Y. 1985)). Here, the Adversary Proceeding has already been withdrawn from the Bankruptcy Court, rendering the centralization concerns virtually nonexistent. C.V. ECF No. 3. In sum, "the core and non-core distinction dictates enforceability of a forum selection clause." *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 641 (D. Del. 2011). Here, because the Adversary Proceeding is noncore, the forum selection clause is not unreasonable and is enforceable because CapRock did not meet its "heavy burden." *Bremen*, 407 U.S. at 17.

---

2 Sometimes, it is strong enough to overcome a forum selection clause, however. One of CapRock's cases addresses that scenario. In *In re Schouten*, this Bankruptcy Court found the particular facts of a case "br[ought] to the forefront the public policy and public interest factors that are critically important in bankruptcy." 657 B.R. 531, 541 (Bankr. N.D. Tex. 2024). There, even though the proceeding was noncore, because it was "*the* asset of the bankruptcy estate that might generate some recovery for its creditors," the centralization public policy was strong enough to not enforce a forum selection clause. *Id.* (emphasis in original).

### IV. The Public Interest Factors Weigh in Favor of Transfer.

The forum selection clause is enforceable, and the Adversary Proceeding is noncore, so 28 U.S.C. Section 1404(a) governs transfer. Section 1404(a) permits transfer for "the convenience of parties and witnesses, in the interest of justice" to a district or division "to which all parties have consented." 28 U.S.C. § 1404(a). Courts typically apply a variety of private and public interest factors to make this assessment but when a valid forum selection clause exists, only public interest factors bear weight. *See Atl. Marine*, 571 U.S. at 63–65. The remaining public interest factors under Section 1404(a) include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Consideration of these public interest factors will "rarely defeat a transfer motion . . . except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

CapRock recites the public interest factors but offers little argument on whether they weigh in its favor. A.P. ECF No. 30 at 18, 23–24. Instead, as discussed, CapRock centered its public policy discussion on arguing the forum selection clause was unreasonable because of the policy of centralizing bankruptcy proceedings together. None of the factors weigh heavily enough in CapRock's favor to create the "unusual case" where a forum selection clause is not enforceable under Section 1404(a). *Atl. Marine*, 571 U.S. at 64. First, CapRock offers no evidence that the District of Maryland is so congested that it cannot manage and rule on this Adversary Proceeding. Second, the District of Maryland has more localized interest in deciding the Adversary Proceeding which entirely arose from events and transactions in Maryland than does the Northern District of Texas. Third, the Toll Processing Agreement is governed by Maryland law which the District of

Maryland is more familiar with than the Northern District of Texas. Of course, the Northern District of Texas can administer the law of other states. *See In re Schouten*, 2024 WL 994105, at *5. Nevertheless, the District of Maryland is self-evidently more familiar with Maryland law. And regardless of whether any questions in the Adversary Proceeding "turn on anything but the straightforward application of the contract's terms and conditions," Maryland law is still applied. A.P. ECF No. 30 at 23. Finally, no foreign law is applicable here and there are no apparent conflict of law problems. Thus, none of the public interest factors of Section 1404(a) weigh in CapRock's favor.

Because the analysis under 28 U.S.C. Section 1412 "involves 'essentially the same' analysis as under § 1404(a)," transfer under Section 1412 would also be appropriate here. *Fulcrum Credit*, 2010 WL 11444280, at *2 (quoting *Bayou Steel Corp. v. Boltex Mfg. Co.*, No. Civ.A 03-1045, 2003 WL 21276338, at *1 (E.D. La. June 2, 2003)). "[W]hether one or the other applies is not outcome-determinative." *In re Hutcheson Med. Ctr., Inc.*, No. 14-42863, 2017 WL 4536076, at *5 (Bankr. N.D. Ga. Oct. 6, 2017).

CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion to transfer this Adversary Proceeding to the District of Maryland. The Adversary Proceeding 2:24-cv-00038-Z is **TRANSFERRED** to the District of Maryland. Defendant's Motion to Dismiss is **DENIED** and its Motion to Abstain is **DENIED AS MOOT**.

SO ORDERED.

October 25, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

16